IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BENJAMIN T. MARCUM,

    Plaintiff,

v.                                               Case No. 2:21-cv-00142

BRIAN PENICK,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDATION**

    This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is Defendant's Motion to Dismiss Complaint (ECF No. 15), which is fully briefed and ready for resolution.

    *I.*    *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

    Plaintiff is an inmate at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia. On March 2, 2021, Plaintiff filed a Verified Complaint (ECF Nos. 2 and 3), alleging that, on September 17, 2020, Captain Brian Penick ("Penick") moved him, without incident, from Pod 4, cell #11 of the Quilliams Two segregation unit to Pod 6, cell #1 thereof. Plaintiff describes the Pod 6 cell area as having an additional glass shield and claims that area was being used to house inmates quarantined because of the Covid-19 pandemic. Plaintiff alleges that, when he asked Penick why he was "putting [him] in quarantine with the covid virus," Penick stated that "he didn't need a

reason why" and that Plaintiff should "keep his mouth shut if he knew what was good for him." Penick also allegedly told Plaintiff "I'm tired of your sh*t," "if you don't like it, sue me," and "go ahead and file another grievance, buddy." (ECF No. 3, ¶¶ 1-11). These comments were allegedly made in front of other inmates, who have executed affidavits to that effect. (*Id.*, Exs. A-1, A-2. E, and H). Plaintiff's complaint alleges that Penick's conduct was malicious, sadistic, and done in punishment for a prior use of force incident, as well as his family's complaints to the prison administration about his conditions of confinement. Therefore, he claims that Penick's conduct violated his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.*, ¶¶ 21-24).[1]

Plaintiff further claims that, on September 21, 2020, he filed a sick call slip reporting that he was sick and requesting to be tested for Covid-19, despite having previously tested negative. (*Id.*, ¶ 12 and Ex. G). He alleges that he was subsequently examined by a nurse on September 29, 2020, who told him she thought "it was just the flu" and she would "get him medication." (*Id.*, ¶ 14). Although the unidentified nurse allegedly told Plaintiff she would recommend that he be retested for Covid-19, such testing never occurred because Plaintiff was not running a fever. (*Id.*)

Plaintiff further alleges that he filed grievances concerning this conduct on September 28, 2020 (Grievance No. 20-MOCC-Q2-944) and September 30, 2020 (Grievance No. 20-MOCC-Q2-987) and he attached copies of those grievances to his complaint. (*Id.* ¶¶ 17, 18, and Exs. B-1 and C-1). The first grievance, No. 20-MOCC-Q2-944, complained that Penick had moved Plaintiff to Pod 6 "with the knowing intent to

---

[1] Plaintiff's allegations of retaliation can also be liberally construed to be asserting a denial of his First Amendment rights.

make [him] sick" in retaliation for an incident two days prior involving the deployment of chemical agents against Plaintiff and the fact that Plaintiff's family had been calling the prison about his living conditions. (*Id.*, Ex. B-1). On September 29, 2020, Captain Richard Toney (who is not named as a defendant) responded to Grievance No. 20-MOCC-Q2-944, stating, "You were placed behind the glass due to causing a disturbance in pod 4. There was no one in quarantine when you were placed in your cell. You will be moved shortly." (*Id.*) Plaintiff appealed to the Superintendent of MOCC, who affirmed that response on October 5, 2020, stating, "When you create disturbances, you will be housed ANYWHERE that is deemed appropriate." (*Id.*) The grievance document shows that Plaintiff initialed the area of the form requesting an appeal to the Commissioner; however, there is no further evidence demonstrating that it was timely mailed to the Commissioner's Office and it contains no response at that level. (*Id.*)

The second grievance, No. 20-MOCC-Q2-987 made a similar complaint. (*Id.*, Ex. C-1). Captain Toney also responded to Grievance No. 20-MOCC-Q2-987 on October 1, 2020, stating, "You were placed in your current cell due to security reasons. You will be moved shortly." (*Id.*) The appeal of that response was rejected by the Superintendent on October 5, 2020, noting that it had been answered by the prior grievance. (*Id.*). Again, while the Plaintiff allegedly initialed the line for an appeal to the Commissioner, there is no indication on the grievance document that it was timely mailed to the Commissioner's Office and it contains no response at that level. (*Id.*)

Two months later, on or about December 8, 2020, Plaintiff sent copies of those same grievances to the Commissioner's Office and contended that he had appealed the decisions to her office on October 6, 2020, but received no response. (*Id*, ¶ 19 and Exs. B-2 and C-2). His hand-written "resubmission" of these grievances to the

3

Commissioner were received at her office on December 11, 2020. (*Id.*) On December 15, 2020, the Commissioner's Office responded to Plaintiff stating that it had no record of previously receiving either grievance appeal and further rejecting each appeal as untimely. (*Id.*, Ex. D). In addition to the grievance documents, Plaintiff has also attached to the complaint his own affidavit, a page of his medical records, and the affidavits of two other inmates - one who allegedly witnessed the exchange between Plaintiff and Penick, and another who also filed a grievance on September 30, 2020, asserting that he had been unnecessarily exposed to Covid-positive inmates when he was placed in the same cell area during the same time period. (*Id.*, Exs. A-1, A-2, E, F, H, I, and J).

On July 29, 2021, Penick filed the instant motion to dismiss (ECF No. 15) and memorandum of law in support thereof (ECF No. 16), contending that Plaintiff failed to properly exhaust the available administrative remedies prior to filing his complaint. Defendant's motion further asserts that the complaint otherwise fails to state any proper claim upon which relief can be granted against Penick, thus entitling him to qualified immunity. On August 16, 2021, Plaintiff responded to the motion to dismiss (ECF No. 17), and on August 19, 2021, Penick filed a reply. Thus, the motion to dismiss is fully briefed and ripe for adjudication.

II.     STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes

a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

## III. DISCUSSION

Defendants' motion is first grounded in Plaintiff's failure to properly exhaust the prison's administrative remedy process concerning the claims raised in his complaint. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which contains the administrative remedy exhaustion requirement, was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Such exhaustion is mandatory regardless of the type of relief sought or offered through the administrative

6

procedures and so long as the grievance tribunal has authority to take some responsive action. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D.W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D.W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed, and has received a final decision from the Commissioner of Corrections or the Commissioner's designee . . . .

W. Va. Code § 25-1A-2(d).

In accordance with W. Va. Code § 25-1A-2. the West Virginia Division of Corrections and Rehabilitation ("WVDCR") has instituted uniform procedures for filing inmate grievances, which, as noted on the grievance forms filed with the complaint, are found in Policy Directive ("P.D.") 335.00. *See Edmonds v. Rob*, No. 3:20-cv-00683, 2021 WL 3463889, at *5 (S.D.W. Va. June 24, 2021), *report and recommendation adopted sub nom. Edmonds v. LKU,* No. 3:20-cv-0683, 2021 WL 3463839 (S.D.W. Va. Aug. 5, 2021). As noted in *Edmonds*, the procedures permit an inmate to appeal a response from the Superintendent to the Commissioner "within five (5) days after he/she receives the [Superintendent's] response . . . using the same form . . ." *Id.*, quoting P.D. 335.00. The Commissioner "shall respond to the appeal, in writing, within fifteen (15) days," thus exhausting the process. *Id.* However, "if a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." *Id.* Therefore, if an inmate fails to fully comply with the provisions of the policy, he "shall not be considered to have taken full advantage of administrative remedies afforded [him] and therefore has not exhausted administrative remedies." *Miller v. Rubenstein*, No. 2:16-cv-05637, 2018 WL 736044, at *5 (S.D.W. Va. Feb. 6, 2018).[2]

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved by the court before reaching the merits of the underlying claims for relief. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). If a plaintiff fails to exhaust his

---

[2] Rather than citing to the prison policy directive setting forth the full grievance process that was in place at the time of the subject incident and the filing of these grievances by Plaintiff, Defendant's motion cites to now-repealed regulations that were formerly contained in Title 90 of the West Virginia Code of State Rules. To the undersigned's knowledge, the West Virginia legislature and the WVDCR have not implemented new regulations concerning the inmate administrative remedy process. Accordingly, the undersigned will not rely on the invalid regulations cited by Defendant.

administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D.W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

In *Ross v. Blake*, 578 U.S. 632, 642 (2016), the Supreme Court held that "the exhaustion requirement hinges on the 'availability' of the administrative remedies. An inmate . . . need not exhaust unavailable remedies." *Id.* The Court further defined "available" as "'capable of use' to obtain 'some relief for the action complained of.'" (*Id.* at 1859, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). "Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *4 (S.D.W. Va. Sept. 12, 2017).

Here, Defendant asserts that the two grievances Plaintiff attached to his complaint (which appear to be the only relevant grievances) fail to demonstrate exhaustion concerning the claims in his complaint. Plaintiff does not dispute that his two grievances were not timely received by the Commissioner's Office, as required to exhaust the third and final level of the administrative grievance process. Rather, his response merely cites to a string of non-precedential cases from other jurisdictions standing for the proposition that the administrative remedy process is a gatekeeping mechanism which should not be used to trap inmates and prevent meritorious claims from being pursued. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 811-12 (7th Cir. 2006); *Hooks v. Rich*, No. CV 605–065, 2006 WL 565909, *5 (S.D. Ga. Mar. 7, 2006);

9

*Campbell v. Chanes*, 402 F. Supp.2d 1101, 1103 n.5 (D. Az. 2005). (ECF No. 17 at 1-2). While, in *Ross*, the Supreme Court recognized an exception to the exhaustion requirement when an administrative remedy is rendered "unavailable" to a prisoner, Plaintiff has not demonstrated that the administrative remedy process was unavailable to him with respect to his claims herein. Significantly, although the documents attached to the complaint suggest that Plaintiff's alleged appeals of Grievance Nos. 20-MOCC-Q2-944 and 20-MOCC-Q2-987 were not received by the Commissioner's Office when he allegedly sent them on October 6, 2020, Plaintiff has not demonstrated that he was prohibited from properly exhausting the available administrative remedy process during the applicable time periods. First, the documents of record fail to establish that Plaintiff delivered the same to prison officials to be mailed on October 6, 2020. Moreover, under the policy directives concerning the administrative remedy process, Plaintiff's attempt to submit the grievance documents to the Commissioner in December of 2020, more than two months after he received the Superintendent's response, was untimely and failed to properly exhaust the process.[3]

Because it is clear from the face of the complaint and the incorporated grievance documents attached thereto that Plaintiff failed to exhaust the available administrative remedies, the undersigned **FINDS** that the complaint must be dismissed pursuant to the PLRA and WVPLRA. Additionally, because the undersigned is recommending dismissal of Plaintiff's complaint for failure to exhaust administrative remedies, the undersigned finds it unnecessary to address Defendant's other grounds for dismissal contained in his motion.

---

[3] The undersigned further notes that the rejection by the Superintendent of the second grievance, No. 20-MOCC-Q2-987, as duplicative of No. 20-MOCC-Q2-944, also failed to exhaust the second level of the grievance process with respect to that grievance.

### III.     RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss (ECF No. 15) and dismiss the complaint and this civil action pursuant to 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing party and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy to counsel of record.

January 14, 2022

Dwane L. Tinsley
United States Magistrate Judge